1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------------x

3   JOSEPH HERSKOVITZ,

4                   Plaintiff,

5             -against-                      21 Civ. 1216(PMH)
                                             Conference
6   EQUIFAX INFORMATION SERVICES,
    LLC; EXPERIAN INFORMATION
7   SOLUTIONS, INC.; TRANSUNION, LLC;
    and VERIZON WIRELESS,,
8
                   Defendants.
9
    ------------------------------------x
10

11                              United States Courthouse
                                White Plains, New York
12
                                August 12, 2021
13

14          (All parties appearing via teleconference)

15

16                  THE HONORABLE PHILIP M. HALPERN,
                              District Judge
17

18

19  STEIN SAKS PLLC
              Attorneys for Plaintiff
20  BY:  ELIYAHU R. BABAD

21

    JONES DAY
22            Attorneys for Experian Information Solutions Inc.
    BY:  JAMES M. GROSS
23        JUSTIN HARRIS
          VICTORIA DORFMAN
24

25

                Angela O'Donnell - Official Court Reporter
                           (914)390-4025

1              THE DEPUTY CLERK:  In the matter of Joseph Herskovitz

2    against Equifax Information Services LLC, et al.

3              Would the plaintiff please note your appearance.

4              MR. BABAD:  Eliyahu Babad, Stein Saks PLLC, attorneys

5    for the plaintiff, Joseph Herkovitz.

6              THE DEPUTY CLERK:  Defense counsel please note your

7    appearance.

8              MR. GROSS:  Good morning, this is James Gross of

9    Jones Day on behalf of defendant Experian Information Solutions

10   Incorporated.  I'm joined by my colleagues, Mr. Justin Harris

11   and Ms. Victoria Dorfman, also of Jones Day.

12             THE COURT:  All right, good morning, counsel.

13             MR. BABAD:  Good morning, your Honor.

14             MR. HARRIS:  Good morning, your Honor.

15             MR. GROSS:  Good morning, your Honor.

16             THE COURT:  All right, let me start by saying I have

17   huge quantities of letter cases from the plaintiff's firm and

18   other firms, and so I look at them all very carefully because

19   of the just raw quantity that I have.

20             Mr. Gross, I've read your well-written letter, and

21   Mr. Babad, I've read your well-written letter.  I would

22   discourage you, Mr. Gross, from making this motion, and let me

23   explain why, and then I'll hear from you and Mr. Babad.

24             First reason that I think this motion isn't going to

25   go anywhere is the document annexed to your letter as Exhibit

1    B, Mr. Gross, is not integral to this complaint.  I've read the

2    complaint, I have it in front of me.  It's just not an integral

3    document.  And so in order for me to actually consider the

4    issue you're raising, I'd have to convert this to a summary

5    judgment motion, and by the time we got done with that process,

6    my concern would be that you're way, way out in terms of time,

7    discovery is over, et cetera.

8           Secondly, and more to the point, my concern is while,

9    I appreciate the logic of your argument, I don't think that

10   it's correct from this standpoint; 1681c-2 is a statute that

11   creates a claim for relief.  It is not a statute that creates a

12   defense to other claims under the act.  And if you view it that

13   way, if you view it that way, as Congress wrote it, you can

14   bring a claim under c-2.  It should not and cannot block claims

15   under other provisions like 1681e or i.  It can't do it.  And

16   yes, there is overlap between the two.  It's not my job to

17   rewrite the statutes, nor would I even consider anything of

18   that genre.

19          If you had a case, Mr. Gross, that said, in effect,

20   listen, a plaintiff is not entitled to bring an e or i case

21   when it's this kind of a fact pattern where, you know, identity

22   theft is at issue.  If you had that case, and that the

23   plaintiff should only bring a claim under 1681c-2, you know

24   that might be something to talk about.  But I'm just reacting.

25   I read Judge Brodie's case that you referred me to, this is the

1    *Grayson against Equifax*, and it was a *pro se* doctor, I guess,

2    who had all kinds of problems, but she construed his complaint

3    loosely because it was *pro se*, or liberally, and in fact said,

4    you know, you might have a claim under 1681c-2, but you need to

5    block it, you need to rewrite it and frame it out a little

6    better.

7              So my concern is that if I do give you permission to

8    make a motion, that by the time we get to the motion, discovery

9    is going to be over, and I guess my corollary is I'm not going

10   to stay discovery on this presentation because I want to get

11   the case adjudicated.  I'm just not willing to do it.

12             Now I know that's a mouthful, and I'm not sure you

13   expected me to jump in here.  So take a moment, Mr. Gross, and

14   just react for me to what I'm suggesting to you, which is, at

15   its core, c-2, 1681c-2 is a statute that creates a claim for

16   relief, not a defense.

17             MR. GROSS:  Thank you, your Honor, appreciate that.

18   I'll take your points in reverse order, if that's acceptable.

19             THE COURT:  Any way you want.

20             MR. GROSS:  So first, to clarify, your Honor, and I

21   apologize that there was confusion from this from our

22   perspective.  But we're not saying that categorically if you

23   bring a 1681c-2(a) claim you are automatically precluded from

24   bringing a 1681e(b) claim and vice versa.  We're not saying a

25   plaintiff has to choose between the two.

1          Rather, the core point here is that Congress, in

2    creating a right of action, as your Honor noted, in 1681c-2(a)

3    expressly blessed as reasonable a procedure by which a consumer

4    reporting agency like my client does not have to block

5    information that is purportedly inaccurate due to identity

6    theft when the plaintiff fails to provide sufficient

7    information verifying the identity theft.

8          And so if Congress said, look, this is reasonable as

9    a matter of law for a CRA to request more information or to not

10   block an account-based identity theft when it's not given this

11   information, plaintiff cannot say, turn around and say, well,

12   ah-ha, yes, I concede that I do not have a claim under that

13   statute because I haven't provided you with the information,

14   but I'm not nonetheless going to dispute information as

15   inaccurate on the grounds of identity theft and then hold you

16   responsible under a different statutory provision, which by its

17   terms requires Experian to maintain reasonable procedures.

18         Congress has already said what is reasonable in this

19   exact circumstance and plaintiff concedes that they have not

20   complied with those requirements.  And so therefore, in this

21   situation, a 1681e(b) claim and i claim related to it with

22   dispute cannot stand because the plaintiff hasn't provided the

23   requisite information necessary.

24         THE COURT:  You're taking 1681c-2 and turning it into

25   a defense to 1681e and i.  This is where I'm running into the

1   difficulty, Mr. Gross.  In other words, I hear what you're

2   saying.  I hear what you're saying, and you're saying that in

3   this scenario your client has a perfect right under c-2 to ask

4   for more information and the rules permit it and I get it.  And

5   you're right.  Is it a congressional oversight, mistake,

6   overwriting, something that permits a plaintiff like this to

7   bring a 1681e claim.  Obviously, you would urge that there is.

8   I can't take 1681c-2 and make it a defense to e or i.  That's

9   why I said to you, and you've made your point to me, which is,

10  Judge, we don't say they can't bring a claim, we say that in

11  order to have even that claim they have to comply with c-2.  I

12  don't know how to get to the logic of what you're saying to me.

13  I interrupted you.  Please continue.

14          MR. GROSS:  No problem, your Honor.

15          I don't think that it's correct to characterize this

16  as a using 1681c-2 as a defense.  Rather, it's a circumstance

17  in which 1681e(b) is a broad statute that applies in a whole

18  host of different scenarios.  You could say for the odd

19  identity theft that information could be inaccurate in a report

20  for a whole number of reasons.

21          THE COURT:  Yes.

22          MR. GROSS:  Now there are other portions of the

23  statute, however, that deal with in accuracy in much more

24  specific contexts, and 1681c-2 is one of those statutes.  And

25  long-standing principles of statutory construction hold that

```
1    when a specific provision deals with something that is also
2    arguably encapsulated by a more general provision, the specific
3    provision controls.  And what we have here is Congress saying
4    as a matter of law it is not unreasonable to just delete an
5    account that is claimed to have been by virtue of identity
6    theft, when the plaintiff doesn't provide you with specific
7    information and here --
8                  THE COURT:  You don't say as the logical corollary to
9    that that a claim under 1681 or i is inappropriate, you say,
10    no, they can bring their claim under 1681e but they should have
11    considered 1681c-2 or is it just that -- this is where I'm
12    struggling, Mr. Gross.  And you understand what I'm saying to
13    you.  I'm not --
14                  MR. GROSS:  I do.
15                  THE COURT:  I'm not arguing with you, I'm trying to
16    be enlightened, frankly, by your point of view.  The argument
17    that this scenario should be handled under c-2 and shouldn't be
18    under e, you know, if there were case law to that effect,
19    that's something else to talk about.  But that's not what
20    you're saying, and I haven't had the benefit of all this work
21    that's going to be required.  I will look at it closely, but
22    you understand what I'm saying to you.  You want to rely on c-2
23    and you're not being sued under c-2 and, therefore, arguably,
24    as Mr. Babad when I get to him will tell me:  Judge, you've got
25    it right, this is not a claim under c-2, so it's not
```

1    applicable. And I'm trying to understand how it could be

2    applicable.

3            MR. GROSS: Understood, your Honor. I'll make two

4    more brief points, and if your Honor remains skeptical, we can

5    move on to the next point.

6            With regards to the interplay between 1681e(b) and

7    1681c-2, again, we are not saying that a plaintiff has to

8    choose between them or that a 1681e(b) claim automatically

9    fails if the plaintiff doesn't bring a suit, 1681c-2 claim,

10   right?

11           You could imagine a scenario in which the plaintiff

12   tries to provide the information that is required to block an

13   identity theft account under 1681c-2 but the consumer reporting

14   agency has procedures in place where they don't receive that

15   information correctly, or vice versa. In that circumstance,

16   the CRA has arguably violated both provisions --

17           THE COURT: Yes.

18           MR. GROSS: -- and has failed to block the

19   information pursuant to 1681c-2, and it has failed to maintain

20   the reasonable procedures aimed at maximum possible accuracy by

21   not having the procedures in place to accept the information

22   provided by the plaintiff.

23           But here that's not the claim the plaintiff is

24   bringing here under e(b). The e(b) claim here is just you

25   didn't delete my account as inaccurate when I told you it was

1    inaccurate.  But that can't stand when we have a statutory

2    provision that says a CRA does not have to just delete an

3    account that is inaccurate by reason of identity theft unless

4    plaintiff provides specific information which plaintiff has

5    concededly not provided --

6            THE COURT:  It actually doesn't say that, right?

7    This is where I think -- the statute actually doesn't say that.

8    It says, if they fail to remove the offending offense, once you

9    give them, and I'm using it loosely, the identity theft report,

10    a term of art, if they fail to do it, they can be held liable.

11    That's what it says, actually, generically speaking, or

12    colloquially speaking, without reference to the exact statutory

13    words.  And this is the difficulty I'm having.

14            I get your point.  My view of your point, so far, is

15    that you're trying to take a statute that creates a claim for

16    relief for a plaintiff and turn it into a defense for your

17    client, and it's just -- it may very well be that some judge

18    brighter than me in an appellate scenario will one day say, oh,

19    no, you know, you can't bring an e claim, 1681e, you know what

20    I mean, e(b), whatever it is, when you have a c-2 scenario.

21    And that may be gleaned from congressional intent somewhere,

22    but when we're talking to each other at the district court

23    level without the benefit of the case law, and Judge Brodie's

24    case doesn't change any of my thinking.  I struggle, frankly.

25            Make your last point, and then I want to hear from

1  Mr. Babad.

2          MR. GROSS:  Understood, your Honor.

3          Briefly, I understand that you disagree with the

4  reading of Judge Brodie's opinion in the *Grayson* case, but in

5  the 1681b section of that case, that is a pleadings based

6  motion, and I understand it's *pro se*, but I would argue that

7  that supports Experian here because my friend on the other side

8  is not proceeding *pro se*, obviously, has very strong counsel.

9          In that case, in evaluating 1681e(b) on the motion to

10  dismiss, the Court said, no, there can't be a violation of

11  1681e(b) when the CRA's procedures asks for more information

12  but didn't delete the account when the plaintiff didn't provide

13  the information.  That is what the *Grayson* opinion holds.

14          THE COURT:  Actually, I'm looking at the opinion, and

15  what the e(b) case is is the consumer must show that the agency

16  failed to follow reasonable procedures in generating its

17  inaccurate report, and you know, she concludes, this is on page

18  6 of the printout I have, plaintiff has not plausibly alleged

19  defendant failed to follow reasonable procedures to assure the

20  accuracy of the information.

21          Look, I fully appreciate, Mr. Gross, your acumen

22  here, and I have no disrespect for your point of view.  This

23  job I have now is as a trial judge, and so I've got to deal

24  with the issues at the level I'm at, and while I understand

25  what your thinking is, I'm struggling to find the pathway,

 1   assuming I agreed with you, to create a solution that would not

 2   be reversible error.

 3          All right, let me hear from Mr. Babad for a minute.

 4          Mr. Gross, I'm sorry I interrupted you, finish your

 5   thought and then we'll hear from plaintiff's counsel.

 6          MR. GROSS:  It's no issue at all, your Honor, just

 7   very briefly.  The portion of *Grayson* is actually a different

 8   provision, a different section than the one your Honor quoted,

 9   it's actually on page 8 of the Westlaw printout, it's the last

10   paragraph before 9 or it begins, plaintiff fails to state

11   claims.  The second-to-last sentence there makes the point that

12   we just tried to articulate, which is that when the defendant

13   recently requested additional documents from plaintiff in order

14   to verify the identity theft, it could not do so based on

15   plaintiff's submissions, there is no 1681e(b) claim.

16          Your Honor, you had talked also about incorporation

17   by reference.  I'm happy to discuss that later, but I recognize

18   that's not front-and-center yet.  I can sit on that issue, if

19   you prefer.

20          THE COURT:  Tell me what -- tell me, I'm looking at a

21   Westlaw, you're saying page 8.

22          MR. GROSS:  Correct.  Right before the asterisk 9

23   where it says "fraud claim," the paragraph above that.  It says

24   plaintiff fails to state a claim for willful noncompliance

25   under 1681e(b).  It's the second-to-last sentence of that

1  paragraph.

2          THE COURT:  I'm just struggling to find it.  I'll

3  have somebody look while I hear from Mr. Babad, because I do

4  want -- I will come back to you on that.

5          MR. GROSS:  Thank you, your Honor.

6          THE COURT:  All right.  Mr. Babad, what do you want

7  to tell me?

8          MR. BABAD:  Good morning, your Honor.

9          THE COURT:  Good morning.

10          MR. BABAD:  I don't really have much to add, I think

11  your Honor said our position.  Even if there is perhaps an

12  overlap, there are three separate provisions with three

13  separate issues, three separate purposes, as your Honor called

14  it.  One is for relief, but they're using it as a defense.  I

15  think Judge Brodie's opinion is not on point but is

16  informative.  It does point out that Judge Brodie dealt with

17  each c-2 and 1681i -- what was it, i? -- separately.  Meaning,

18  it almost like impliedly said that plaintiff's -- that

19  defendant's position is incorrect because otherwise they would

20  have, one of them would have knocked the other out.  And Judge

21  Brodie dealt with them separately because they are separate

22  provisions.  And like we said in our letter, they had different

23  purposes.  One is more immediate, it's within the four days.

24  And I think defendant maybe misunderstands our claims a little,

25  because we're not just saying that it wasn't deleted, we're

1   saying it was unreasonable investigation, and that has nothing

2   to do with c-2, c-2 doesn't talk about investigation.  There's

3   no investigation, it's just -- it's an -- excuse me.  It's an

4   automatic provision.  They get the documentation, they have to

5   delete it.  And so they're just trying, they're trying to mix

6   up separate provisions by saying one is more broad --

7            THE COURT:  You can easily, though, understand a

8   client such as theirs this becomes a little bit of a

9   gamesmanship and maybe congressionally approved gamesmanship

10  scenario where identity theft is really at issue and what's

11  really at issue is the desire to correct a deficiency and then

12  the clever lawyer works his way through the fact pattern to, in

13  effect blunt one of the purposes for the statute.

14           I'm not criticizing you, Mr. Babad, at all, I'm just

15  concerned that this is a scenario where Congress could have

16  sharpened its pencil a little bit to clarify what the real

17  purpose here is in having both of these provisions.

18           All right, I interrupted you, I'll let you finish.

19           MR. BABAD:  I don't disagree with your Honor that it

20  could be that Congress could have written these better.  I

21  think we could say that about many statutes.  But I would just

22  point out, I think that -- I think almost the opposite a little

23  bit of what your Honor is saying in that it's not -- obviously,

24  a defendant doesn't want to have to deal with more than one

25  statute, more than one provision, but I think that Congress

1    actually made it almost better for defendants by separating out

2    c-2, right?  C-2 is this automatic, almost strict liability.

3    You get this information, you have to delete it.  But beyond

4    that, if it's not a c-2 issue, there are still requirements

5    that they have to deal with, and so Congress actually exempted

6    defendant here from dealing with c-2 because they didn't get

7    the required information.

8            Now, defendant is saying, well, we could ask for more

9    information, and it's still reasonable.  And those all may be

10   true.  Those are questions of fact or separate questions.

11   That's not the issue that we have in this letter that defendant

12   wrote.  Defendant wrote a letter saying that c-2 and 1681 can't

13   happen together.  They're not saying that they met their

14   obligations under 1681i or e.  That's a separate argument, and

15   I didn't address it in my papers, and it's not anywhere here,

16   but as far as their claim, the two do not overlap, they're

17   separate.

18           THE COURT:  No, I get it.  Mr. Gross, your point, I'm

19   now pointed to the language, I think I'm looking at the

20   language, and I think what Judge Brodie did, though, was say

21   because this is a -- because this is an identity theft

22   scenario, if I'm reading this correctly, the 1681e(b) is not

23   plausibly pled because they ask for more information concerning

24   identity theft.  And so 1681e(b) was dismissed.  The willful

25   non-compliance was dismissed.  Is that your point?

1    MR. GROSS:  I think that is the -- that's essentially

2   right, your Honor.  Essentially what we're saying is the next

3   logical step from the *Grayson* case, which if there is no

4   plausible e(b) claim, if the allegation is you must delete this

5   because of identity theft, but then I as the plaintiff don't

6   provide you with the information that you need to delete it as

7   identity theft.  It's not a failure on Experian's part to

8   maintain reasonable procedures *prime facie* in that

9   circumstance.  There is no plausible, reasonable procedures

10  claim.

11    THE COURT:  Now that's a different theory, and maybe

12  I'm fessing up to a misunderstanding of your letter, but if

13  that's the theory on which you're predicating your motion, you

14  know, that's something to talk about, right?  I mean, if in

15  fact, your answer to e(b) claim asserted here is, yeah, you

16  can't have a claim because we're operating under a, we're

17  operating under a theft, identity theft scenario, and therefore

18  we're entitled to ask for more, and the statute authorizes us

19  to ask for more, so you can't have an e(b) claim as a matter of

20  law.  That's something else.  That's something else.

21    So help me through that.  Is that something you're

22  pressing or am I misreading your letter?  I think I've spent

23  more time on this letter than I need to for a premotion

24  conference, but am I misconstruing your argument?

25    MR. GROSS:  Not at all, your Honor, that's exactly

1   right.  We apologize if this wasn't clear the way that it was

2   presented, but *Grayson* and other cases like it, for example, we

3   cite the *Huffman* case which has the very similar analysis on

4   the 1681i claim, which says that when a plaintiff is bringing

5   an identity theft case and it doesn't -- the record

6   unequivocally establishes that the plaintiff did not provide

7   the information necessary to block that under what would

8   satisfy under 1681c-2, then an e(b) and an i claim are entirely

9   implausible because by definition it was reasonable for

10  Experian to request the information that it did.  And plaintiff

11  then chose to bring suit.  And so as a result of that, there

12  can't be a *prime facie* claim.  It's not a well-pled e(b) or i

13  claim.

14          Again, this isn't to say there can never be an e(b)

15  and i claim with the corresponding c-2 claim, we discussed that

16  earlier, but this is the core of the argument, and I think that

17  *Grayson* and *Huffman* directly support that.  Specifically, the

18  paragraph that your Honor just referenced.

19          THE COURT:  Yes.

20          Mr. Babad.

21          MR. BABAD:  Yes, your Honor.

22          THE COURT:  Reframe this a little bit in my mind.

23  What's inappropriate about this thinking?  In other words,

24  you've brought e(b) claims and an i claim, and it's willful or

25  negligent behavior, and now that I've been educated, the

1    defendant says, no, no, no, you can't bring those claims

2    because I'm operating under c-2, and I'm entitled to ask for

3    more information.  And therefore, there can't be any willful

4    misconduct by the client.

5            What's wrong with that thinking?  I know you don't

6    agree with it, but tell me what's wrong with it.

7            MR. BABAD:  The first, I would say the first problem

8    is that they're still using it as a defense, right?  It's a

9    statute for relief, c-2 is relief.  They're using it as a

10   defense.

11           THE COURT:  I think they're saying in effect, though,

12   as it's being crystallized, willful non-compliance can't exist

13   if I'm doing what Congress told me to do.  I guess you're right

14   in a sense, it's a different articulation of the c-2 defense

15   (indiscernible) but it certainly feels a lot better than it did

16   initially as I was reading these letters.

17           Okay, I think I understand now.  It took me a while,

18   Mr. Gross, nothing to do with your presentation, took me a

19   while to understand what you're saying.  I don't know, I

20   actually do not know where I come out on this.  I don't know,

21   frankly, whether your letter asking for more information is

22   something I'm going to consider because I don't believe it's

23   integral to the plaintiff's complaint and that may be a

24   showstopper.  I'm happy to read your cases.  I will give you a

25   permission to make the motion.  I'm going to ask you to bundle

1    it, and I'll explain in a minute bundling.  But you can make

2    your motion.

3            I just caution you, the other point I would make is,

4    you know, I'll put the motion in the queue, I'll get to it as

5    quickly as I can.  We're inundated with things, and I'm going

6    as quickly as an appropriate pace requires, but it will be some

7    time before I get to this motion.  I'm not going to stay

8    discovery, and I'm not going to slow the process down.

9            It also feels like, unless this is the War the Roses,

10   this case could, should resolve itself short of having Jones

11   Day educate me on their point of view of the interplay between

12   c-2 and e(b) and i.  But that's up to you.  I'm not going to

13   tell you what to do.

14           How much time do you need to serve your motion?

15           MR. GROSS:  Thank you, your Honor.  I think we can

16   make this motion very quickly.  I think we can do this in a

17   matter of two weeks, 14 days, to put together an opening brief

18   and serve it on opposing counsel, if that accords with what the

19   Court wishes.

20           THE COURT:  So you'll serve your motion, serve but

21   not file, on August 26.

22           Mr. Babad, how much time do you need?

23           MR. BABAD:  The problem is, your Honor, most of

24   September is a bunch of holidays.

25           THE COURT:  I realize, yes, you have religious

1    observances to take into account, and I will take them into

2    account.  I certainly have no intention of interrupting that.

3              MR. BABAD:  Thank you, your Honor.

4              THE COURT:  So let's be realistic about it, and give

5    me a date that would work.  They're entitled to move their case

6    along, too, so let's be mindful of that as well.

7              MR. BABAD:  Understood, your Honor.  I was assuming

8    they would get 30 and we would get 30, that would be fine for

9    me but if they want --

10             THE COURT:  They want to move this along.  Obviously,

11   they want to move it along.  They want to get it in front of me

12   as quickly as they can.  Could you do this by Friday, the 24th

13   of September?

14             MR. BABAD:  I guess I will, yes.

15             THE COURT:  I'm asking, I'm not directing.  I asked

16   the question.

17             MR. BABAD:  If I can get one more week on it, I would

18   appreciate it.

19             THE COURT:  All right, that's October 1st,

20   opposition.

21             Mr. Gross, please understand, I'm not going to

22   interrupt somebody's religious observances for any reason

23   whatsoever barring an emergency and I don't consider this --

24             MR. GROSS:  Of course.  Understood.

25             THE COURT:  How much time for a reply?

1          MR. GROSS:  I think we can do a reply in seven days,

2     your honor.  I do have a practical concern, however.

3          THE COURT:  Okay.

4          MR. GROSS:  My understanding from my colleague is I

5     believe that discovery is slated to closed in about a month or

6     so, sometime in mid-September.

7          THE COURT:  Yes, it is.

8          MR. GROSS:  If I have that correct, I'm just

9     wondering how that impacts what we're doing here.

10         THE COURT:  Doesn't.

11         MR. GROSS:  Particularly given your Honor's concern

12    about the document being integral to the complaint.  I'm happy

13    to say our piece on that as well.  I did want to raise the

14    scheduling issue.

15         THE COURT:  I'm not going to -- see, here's the

16    thing, ordinarily -- Mr. Gross, I'm new to this job, as you

17    know.  I've been here, and I'm delighted to be here.  This is

18    an honor and privilege for me.  I've been here about a year and

19    five months.  I inherited an inventory of cases from the

20    others, which I'm thankful to have.  Ordinarily, these kinds of

21    motions that I've seen so far come earlier on in the process,

22    not later on in the process, as a practical matter, and the

23    reason is lawyers want to know where they stand.  Lawyers want

24    to know where they stand.  I don't know what other discovery

25    you need to complete, but it would be more practical if I were

```
 1   to urge that you reconsider this thinking for a second, that
 2   you complete your disclosure and you ask permission to file a
 3   motion for summary judgment later in September.  That would
 4   permit me, obviously, to look at your letter and anything else.
 5   It would also, you know, perhaps create a broader base of case
 6   law.  This is an evolving area, as you know, and I find that
 7   monthly there's more to learn about this act and the other
 8   companion act as we go.  That might be an easier way for you to
 9   get to the same place and a more efficient way.  What I'm not
10   willing to do is to adjourn discovery because you've decided to
11   make a 12(c) motion which, you know, I don't need your argument
12   on integral documents.  You can take this one to the bank.  I
13   have become an expert on what is integral and what is not
14   integral to motions to dismiss because I have so many of them.
15   So I don't need any education on that.  But I would say this.
16   I'm going to give you this briefing schedule.  This is it.
17   Discovery will be over on the 21st barring some lawyering
18   issues that you may have.  If I know you're working and trying
19   to complete disclosure, I would give you a brief extension if
20   it was necessary.  If you've done nothing, don't call me, I'll
21   call you.  I don't do well that way.  So I don't want you to
22   misconstrue.
23          And also you have fact discovery I'm told is over in
24   September, but all discovery is over in November.  And if you
25   bled fact discovery past the September date, I wouldn't object
```

1    to you getting a little extra time for that, but I'm not going

2    to extend disclosure, and I'm not going to for any reason other

3    than the lawyers need some extra time and they're working.  And

4    I'm not going to stay it.  So the procedural posture is a

5    little peculiar, but that's where I am.

6            So what I'll do is I'm going to ask you to bundle

7    this motion.  Those are the dates.  Meaning, on the 26th you'll

8    serve it, on October 1st plaintiff will oppose by serving.  On

9    the 15th you'll serve your reply.  And on the 15th defendant

10   will file its motion papers and its reply.  And on October 15th

11   plaintiff will file its opposition so that all the papers are

12   filed on the 15th, and the simple reason is statistically that

13   the clock for statistics begins to run on the filing of the

14   motion papers.  In this case it would be almost two months on

15   August 26th if you didn't bundle it, and so I wouldn't have the

16   benefit of having that extra time.  That said --

17           MR. GROSS:  Your Honor, if I -- oh, I'm sorry.

18           THE COURT:  If you decide, Mr. Gross, not to make

19   your motion, that's okay with me, just let me know, and you'll

20   just proceed on your merry way.  I don't need to put you on the

21   spot and have you figure out what you want to do right now.

22   You may want to think it through a little bit, and I want to

23   give you the courtesy of giving you that opportunity.

24           MR. GROSS:  Thank you, your Honor.  I very much

25   appreciate that.  We will confer with our client and send a

1    letter on the Court about whether we intend to move on 12(c) or

2    to wait for summary judgment.

3            Candidly, your Honor, I think as a practical matter,

4    there's no sense in burdening your Honor with two sets of

5    motion papers which will raise at least some similar arguments,

6    which may counsel in favor of just moving post close of

7    discovery on a summary judgment motion.  That is candidly where

8    I think we're leaning towards right now.  If your Honor

9    wouldn't mind, we'd like to just talk it over with our clients.

10            THE COURT:  Of course.

11            MR. GROSS:  And we'll submit a short letter to the

12    Court on that front.

13            THE COURT:  Of course.  And I don't -- listen, I have

14    rolled up my sleeves here, and I'm trying to understand the

15    point of view, and thankfully, that's why I have these

16    conferences, so that in scenarios like this where I don't know

17    whether it was you or it was me, Mr. Gross, it was probably me,

18    because the letters are well written, I didn't capture the

19    gravamen, the essence, immediately, although I think I did, and

20    so it gives me the chance to get a feel for where we are in a

21    scenario, and I very much appreciate you spending the time with

22    me.

23            Mr. Babad, as always, we are together all the time on

24    these cases.  I always appreciate your point of view as well.

25            So I thank you both for enlightening me, and you

1    know, let's give it a week or so.  Once you hear from your

2    client, let me know where you are, and then if you want to

3    remind me later on that we had this lengthy discussion, I may

4    just give you permission to file your motion for summary

5    judgment.  I don't need to make you go through this exercise

6    twice.  I think the only difference could be, unless there's

7    other discovery, that this letter from your client, Mr. Gross,

8    would certainly be part of the 56.1.

9            The one thing I would counsel is if you do decide to

10   go 56.1, I would require you to send your 56.1 to plaintiff's

11   counsel first.  You'll see my rule.  It makes sense from my

12   seat to have the lawyers address each other on 56.1 before you

13   get a briefing schedule from me.  So while I may not --

14           MR. GROSS:  Of course.

15           THE COURT:  -- require you to explain to me all over

16   again, but the 56.1 part I would insist you keep.

17           All right, anything else?

18           MR. GROSS:  Understood, your Honor.  Thank you very

19   much, your Honor.  Just out of an abundance caution, if we do

20   the 56.1 route, there may be other arguments we would want to

21   raise.

22           THE COURT:  Of course.

23           MR. GROSS:  I just want to be clear we're not waiving

24   those at all.

25           THE COURT:  No, you're not.  Not in the least.

1              MR. GROSS:  It's just out of an abundance of caution.

2              THE COURT:  Not in the least.

3              Mr. Babad, anything else from you today?

4              MR. BABAD:  No.  Thank you, your Honor.  Pleasure as

5    always.

6              THE COURT:  Counsel, take care.  Thank you very much.

7              MR. GROSS:  Thank you, your Honor.

8              (Proceedings concluded)

9    CERTIFICATE:  I hereby certify that the foregoing is a true and
     accurate transcript, to the best of my skill and ability, from
10   my stenographic notes of this proceeding.
              _____
11   Angela A. O'Donnell, RPR,Official Court Reporter, USDC, SDNY

12

13

14

15

16

17

18

19

20

21

22

23

24

25